J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
michael@kalerlaw.com

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
mak@kramerlawip.com

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>                              Plaintiff<br>    v.<br><br>HUMAN TOUCH LLC, a Delaware company, INTERACTIVE HEALTH, Inc., a Delaware corporation; and DOES 1 – 100,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>1 )<br>)<br>)<br>)<br>) | Case No. 08cv1080 BTM CAB<br><br>***EX PARTE* REQUEST FOR LATE FILING OF OPPOSITION TO MOTION FOR STAY**<br><br>Date:  TBD<br>Time:  TBD<br>Courtroom:  15, Fifth Floor<br>Hon. Barry Ted Moskowitz |

Plaintiff JENS E. SORENSEN, as TRUSTEE OF THE SORENSEN RESEARCH AND DEVELOPMENT TRUST ("SRDT") hereby requests the Court for leave to file the following opposition brief one (1) business day late: **OPPOSITION TO DEFENDANT'S MOTION TO STAY,** and supporting documents thereto.

The due date for this Opposition of this motion which is calendared for September 12, 2008 was Friday, August 29, 2008, but was inadvertently missed on Plaintiff's counsel's calendar.

Due to the brief nature of Defendant's Motion to Stay (only 2 pages), and the coordinated nature in which this Court has handled related cases on U.S. Patent No. 9,435,184, and due to the fact that Plaintiff filed two other oppositions to stay in related cases on the same basis facts and arguments, no prejudice will accrue to Defendant by allowing this filing.

Plaintiff's counsel attempted to contact Defendant's counsel – Mr. Hasan and Mr. Dukarich - to obtain a stipulation regarding this matter, but has not yet heard back.

Plaintiff is obviously amenable to an extension of Defendant's deadline to file their Reply brief.

DATED this Tuesday, September 02, 2008.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT
TRUST, Plaintiff


/s/ Melody A. Kramer
Melody A. Kramer, Esq.
J. Michael Kaler
Attorney for Plaintiff

1

**PROOF OF SERVICE**

2

3

4

I, Melody A. Kramer, declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action.  My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121.

5

On Tuesday, September 02, 2008, I served the following documents:

6

7

*EX PARTE* REQUEST FOR LATE FILING OF OPPOSITION
TO MOTION FOR STAY

8

**[PROPOSED] ORDER ON PLAINTIFF'S *EX PARTE* REQUEST FOR LATE FILING OF OPPOSITION TO MOTION FOR STAY**

9

10

11

12

13

14

15

16

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Syed A. Hasan<br>Gary Dukarich<br>Christie, Parker & Hale, LLP<br>350 West Colorado Blvd, Ste. 500<br>Post Office Box 7068<br>Pasadena, California 91109-7068<br>art.hasan@cph.com<br>gary.dukarich@cph.com | Defendants/<br>Counterclaimants<br>HUMAN TOUCH LLC &<br>INTERACTIVE HEALTH<br>LLC | Email - Pleadings Filed with the Court via ECF (as to Ex Parte Application)<br><br>Email (as to Proposed Order) |

17

18

☒ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

19

20

21

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

22

23

☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

24

I declare that the foregoing is true and correct, and that this declaration was executed on

25

Tuesday, September 02, 2008, in San Diego, California.

26

27

/s/ Melody A. Kramer
_____
Melody A. Kramer

28

2.

Case No. _____

1  MELODY A. KRAMER, SBN 169984
2  KRAMER LAW OFFICE, INC.
   9930 Mesa Rim Road, Suite 1600
3  San Diego, California 92121
4  Telephone (858) 362-3150
   mak@kramerlawip.com
5

6  J. MICHAEL KALER, SBN 158296
   KALER LAW OFFICES
7  9930 Mesa Rim Road, Suite 200
8  San Diego, California 92121
   Telephone (858) 362-3151
9  michael@kalerlaw.com

10

11 Attorneys for Plaintiff JENS ERIK SORENSEN,
   as Trustee of SORENSEN RESEARCH AND
12 DEVELOPMENT TRUST

13

14

15              UNITED STATES DISTRICT COURT

16          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

17

18 JENS ERIK SORENSEN, as Trustee of    )  Case No. 08cv1080 BTM CAB
   SORENSEN RESEARCH AND               )
19 DEVELOPMENT TRUST,                   )  **OPPOSITION TO DEFENDANT'S**
                                        )  **MOTION TO STAY**
20                          Plaintiff   )
                                        )
21      v.                              )
                                        )  Date:  September 12, 2008
22 HUMAN TOUCH LLC, a Delaware          )  Time:  11:00 a.m.
   company; INTERACTIVE HEALTH          )  Courtroom:  15, Fifth Floor
23 LLC, a Delaware company; and DOES 1  )  Hon. Barry Ted Moskowitz
24 – 100,                               )
                                        )
25                                      )
                          Defendants.   )
26 ─────────────────────────────────── )

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iv

INTRODUCTION ............................................................................................... 1

FACTUAL SUMMARY ....................................................................................... 1

ARGUMENT ...................................................................................................... 4

I.   REEXAMINATION PROCEEDINGS OF THE '184 PATENT
     NEITHER MANDATE NOR JUSTIFY STAY OF THIS CASE ................ 4

     A.   New Statistics Indicate That the Average Pendency Of An
          Ex Parte Reexamination Exceeds Three Years.................................... 4

     B.   The District Court is The Best Venue For Adjudication As The
          Issues Subject To Reexamination Are Subject To Re-litigation .......... 5

          1.   Patent invalidly is the least likely outcome of the
               reexamination.............................................................................. 6

          2.   The Patent Office will not have all prior art.............................. 6

          3.   The District Court Litigation will be determinative.................. 6

     C.   A stay would unduly prejudice and tactically disadvantage
          the nonmoving party – Plaintiff ......................................................... 7

II.  PROCEEDINGS ON THE CLAIMED DEFENSE OF LACHES SHOULD
     NOT BE STAYED .......................................................................................... 8

III. PROCEEDINGS ON ISSUES IN THIS CASE THAT ARE UNRELATED
     TO THE SUBJECT MATTER OF THE PENDING REEXAMINATIONS
     SHOULD NOT BE STAYED......................................................................... 9

     A.   Proceedings On Procedural Issues Raised By The Pleadings Should
          Not Be Stayed. ................................................................................... 10

     B.   Proceedings On Affirmative Defenses Unrelated To Issues
          Being Addressed In Reexamination Should Not Be Stayed............... 10

C.    Proceedings on Patent Invalidity and/or Unenforceability
Claims Outside of the Scope of the Reexamination Proceedings
Should Not Be Stayed. ........................................................................ 10

CONCLUSION .......................................................................................... 11

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

4

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).................................................................................8

5

*Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942, 18 USPQ2d 1707, 1710 (Fed. Cir.) ................................................................6

6

7

*ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D.Cal. 1994) ......................................................................................4

8

*Sony Computer Entertainment America Inc. v. Dudas*, 2006 WL 1472462, at *4 (E.D.Va. May 22, 2006) ................................................................5

9

*Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. 2005) ...........................4

10

11

*KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D. Cal. 2006).........................................................................................4

12

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F. Supp. 2d 785, 788 (E.D.Va. 2005).........................................................................................7

13

14

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 2007 WL 2990152, at *1 (N.D.Cal. Oct. 11, 2007) ........................................................6

15

*Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at *2 (N.D. Cal. 2006) ..................4

16

*Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp .2d 1107, 1111 (N.D. Cal. 2006). ......................................................................................7

17

<u>Statutes</u>

18

35 U.S.C. §301 .................................................................................9

19

35 U.S.C. §302 .................................................................................9

20

35 U.S.C. §315(c) .............................................................................5

21

22

23

24

25

26

27

28

**INTRODUCTION**

On August 20, 2008, Judge Moskowitz directly voiced concerns about the possible length of the pending reexamination of U.S. Patent No. 9,435,184 ("'184 patent"):

> I saw somewhere that sometimes it [reexamination] can take up to five years.  I don't find that acceptable.  This is just no finality and there is lots of economic issues that companies are involved with that they can't have this hanging over their head for five years, plus the time of litigation.

Transcript from August 20, 2008 proceedings, at page 33:13-20 (copy attached as Exhibit A to *Kramer Decl.*).

New statistics show that the average pendency of an *ex parte* reexamination proceeding exceeds three years and often extends more than seven years.

Before staying this or any other cases on '184 patent, the Court is obligated to review and evaluate the growing body of evidence showing that the average length of *ex parte* reexaminations is far greater than the two years the USPTO reports it to be.  This evidence is of expressed interest of this Court and directly undermines the Court's grant of stay pending reexamination in the *Sorensen v. Black & Decker* case issued a year ago.

Patent invalidity is the least likely outcome of the reexamination proceeding and thus the suggestion that the reexamination will save resources is mere speculation.  Stay will unduly prejudice and tactically disadvantage the non-moving party – Plaintiff – and should not issue.

**FACTUAL SUMMARY**

In July 2007, Black & Decker filed a request for reexamination of U.S. Patent 4,935,184 ("'184 patent").  In December 2007, co-defendants to Black & Decker filed another request for reexamination.  *Kramer Decl.* ¶ 4.

In the 13 months since filing with the USPTO, no office action – the first

1   substantive step in a reexamination proceeding – has still not issued. *Kramer Decl.* ¶

2   5.

3       This Court has stated in previous orders for stay that "[i]f it appears that the

4   reexamination [of the '184 patent] will not be effected within a reasonable time,

5   Plaintiff may move to vacate the stay."[1]  Those orders explicitly rely on "the reasons

6   stated in the Court's order granting stay" in the *Black & Decker* case.

7       On February 25, 2008, Judge Moskowitz said "[i]f it turns out that this

8   [reexamination] is not going to be practicable because it's going to take five years,

9   you know, that's obviously something of concern to the court.  Two years is, well,

10   let's say it's long enough.  If it's going to be a lot longer, then the court may

11   reconsider the stay . . ."[2]

12       On June 25, 2008, well-respected intellectual property blogger Dennis Crouch

13   reported the results of a statistical analysis of USPTO reexamination figures for

14   2000+ reexamination certificates published since 2000.

> The reexamination certificates in my sample had an average pendency
> of 33.5 months (median 28.5 months).*  The PTO's reported average
> and median are 24.0 months and 18.6 months respectively.   The
> difference apparently comes from their inclusion of reexaminations
> from the 1980's and the 1990's which had much lower pendency than
> more recent numbers.

20   *Kramer Decl.* ¶ 6, Exhibit B.

21       On June 26, 2008, Professor Harold Wegner who has testified before Congress

22   regarding patent reforms and is also a partner with Foley & Lardner (counsel for one

23   of the *Black & Decker* case defendants) cited Dennis Crouch's research and added

---

[1] For example, *Sorensen v. Senco, et al.,* Case No. 08cv00071.

[2] February 25, 2008 transcript of proceedings in *Sorensen v. Helen of Troy Texas Corporation, et al*, Case No. 07cv2278 BTM CAB, at page 17:17-24.  Although the Court also stated that his "inclination" was to consider stays in the '184 patent case all together, the Court subsequently denied a Motion to Consolidate, thus seeming to moot that intention.

Case No. _____

his own blistering critique of the PTO reexamination process.

> There are serious structural problems with U.S. reexamination – both *ex parte* and inter partes. . . .
> ***Important Reexaminations Remain Pending Three-Plus Years:*** **Many if not most** *ex parte* reexaminations lose their commercial criticality after three years, resulting in either abandonment or acceptance of narrow claims after that period.
> ***Seven-Plus Years for Reexaminations Reaching the Federal Circuit:*** Stripping away the "easy" *ex parte* reexaminations – particularly those presented by the patentee himself – and those that involved commercial settlements (where the patentee often then accepts whatever narrow claims may be offered by the Examiner), the remaining reexaminations would have a much higher average pendency than the already unsatisfactory 33.3 month average. . . .

*Kramer Decl.* ¶ 7, Exhibit C.

In February 2008, Professor Wegner was also reported in the San Diego Intellectual Property Lawyers Association journal as stating that "today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years." *Kramer Decl.* ¶ 8, Exhibit D.

In related cases in Southern California, this Court has already started restricting the extent of stays in '184 patent cases, declining to stay resolution of threshold procedural questions of personal jurisdiction and venue and advising Defendants to produce asserted prior art now so it can be included in the pending reexamination.[3]

Most recently, this Court has taken further steps to ensure preservation of evidence pending stay by requiring representations by defendants that they are preserving molds and technical documents in their possession, and allowing Plaintiff to propound an interrogatory asking for identification of non-parties who may

---

[3]For example, *Sorensen v. Star Asia*, Case No. 08cv307.

Case No. _____

1  possess such evidence. [4]

2                                          **ARGUMENT**

3

4  **I.    REEXAMINATION PROCEEDINGS OF THE '184 PATENT NEITHER MANDATE NOR JUSTIFY STAY OF THIS CASE**

5          When determining the appropriateness of a stay pending reexamination, courts

6  consider three factors: "(1) whether a stay would unduly prejudice or present a clear

7  tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the

8  issues in question and trial of the case; and (3) whether discovery is complete and

9  whether a trial date has been set." *Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at

10  \*2 (N.D. Cal. 2006) (citing *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.

11  Supp. 1378, 1380 (N.D.Cal. 1994)); *see also Jain v. Trimas Corp.*, 2005 WL

12  2397041, at \*1 (E.D. Cal. 2005); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL

13  708661, at \*2 (N.D. Cal. 2006).

14          As will be detailed below, consideration of these factors do not warrant a stay

15  of this case.

16

17          A.    New Statistics Indicate That the Average Pendency Of An *Ex Parte*

18                Reexamination Exceeds Three Years.

19          The Court has indicated that the length of the reexamination is a primary

20  factor in issuing a stay, and that anything beyond 2 years is unacceptable: "if nothing

21  seems likely at the end of two years, then I don't know that I'm going to keep the

22  stay. I mean, I think the odds are that I am not going to keep the stay in place."

23  Kramer Decl. ¶ 10, Exhibit A, at page 10:15-18.

24

25  ───────────────

26  [4] *Sorensen v. Logitech, Inc., et al.*, Case No. 08cv308; *Sorensen v. CTT Tools, Inc., et al.,* Case No. 08cv231; *Sorensen v. Ryobi Technologies, Inc., et al.*, Case No. 08cv0070; *Sorensen v. Emerson Electric Co., et al,* Case No. 08cv0060; *Sorensen v. Esseplast (USA) NC, Inc., et al*, Case No. 07cv2277; *Sorensen v. Senco, et al.,* Case No. 08cv00071.

27

28

Case No. _____

New evidence makes a compelling case that the reexamination will likely take more than three years.  Statistics released on June 25, 2008, by University of Missouri Intellectual Property Professor Dennis Crouch, show that the actual pendency for *ex parte* reexaminations is 33.5 months.  *Kramer Decl.*, Exhibit B.

Moreover, the pendency of "important" reexaminations (reexaminations that have reached the Federal Circuit for a merits appeal) is an astounding eight (8) years.  See *Kramer Decl.*, Exhibit C.

Additionally, Sorensen has conducted its own research and found over 90 completed reexaminations that took in excess of seven years to complete.  Further, Sorensen found many other reexaminations for which no certificate has yet issued after many years in the reexamination process.   *Kramer Decl.* ¶ 9.

The evidence is overwhelming.   There is no realistic expectation that the reexamination in this case will take anything less than 3 years or more.  In that time, this Court could undoubtedly resolve this case and those associated with '184 patent.

If this Court considers two years long enough, and overwhelming evidence shows now that the reexamination will extend much longer than two years, there is no reason why a stay should issue.  The Court should not wait two years before it concludes that the initial two year estimate was faulty.

B.    The <u>District Court is The Best Venue As The Issues Subject To Reexamination Are Subject To Re-litigation</u>

In *ex parte* reexaminations, the party requesting reexamination has no participation in the proceedings after the filing of the request, with the exception of a potential reply if the patentee files the optional patent holder statement.  Because the requestor does not participate in the proceedings, the requestor is not bound by the outcome and can re-litigate the very invalidity arguments that the PTO rejected in subsequent litigation and more.   *See* 35 U.S.C. § 315(c); *Sony Computer Entertainment America Inc. v. Dudas*, 2006 WL 1472462, at *4 (E.D.Va. May 22,

Case No. _____

1    2006) (federal patent laws provide "for broad estoppel provisions pertaining to inter

2    partes reexaminations that do not apply to ex parte reexaminations"); *Procter &*

3    *Gamble Co. v. Kraft Foods Global, Inc.*, 2007 WL 2990152, at *1 (N.D.Cal. Oct. 11,

4    2007).

5         Because each and every issue now pending before the USPTO in

6    reexamination can be re-litigated in this lawsuit, a stay pending completion of the

7    reexamination will not simplify any issues.

8

9         1.    *Patent invalidly is the least likely outcome of the reexamination.*

10        The statistics paint a very compelling picture that the reexamination will be a

11   complete waste of the USPTO's and the parties' time: only 12% of reexaminations

12   result in the cancellation of all claims, while 29% result in the confirmation of all

13   claims.   See *Kramer Decl.*, Exhibit B.   The most common result (59%) is the

14   confirmation of at least one independent claim.   *Id.*   However, every argument

15   defeated at the USPTO will be brought up again in front of this court.

16        In the balancing test that the Court must do when issuing a stay, the Court

17   should strongly consider the fact that the most likely outcome at the USPTO is that

18   the main issues for claim construction will look exactly like they do now.  Therefore,

19   the issues before the Court will not be simplified and the Court will have the same

20   arguments before it as the USPTO.

21

22        2.    *The Patent Office will not have all prior art.*

23        Another consideration that the Court should take into account is that the Patent

24   Office will not have all of the prior art before it during the reexamination.  There are

25   more than 20 different defendants in cases involving the 184' patent before this

26   Court.  None of them are required to disclose to the PTO the prior art they may have

27   in this case.  As a result the District Court, where all arguments and all prior art, by

28   all interested parties, are disclosed, is the best venue for determination.

Case No. _____

1

2          *3.    The District Court litigation will be determinative.*

3          There is an 88% chance that this case will continue in litigation before this

4    Court despite the reexamination delay.    The reason is simple.    The least likely

5    outcome from the USTPO is complete cancellation of claims.    Further, the litigation

6    before this Court will be determinative and binding for all parties involved; the

7    reexamination is not.    As a result, there is no reason to delay litigation before this

8    Court.

9

10         C.    A stay would unduly prejudice and tactically disadvantage the
                 nonmoving party – Plaintiff.

11

12         Plaintiff hereby incorporates its arguments contained in Oppositions to

      Motions for Stay in related '184 patent cases[5] and the responses to OSC re Stay in
13
      related cases[6] showing that it is unlikely that the pending reexaminations will be
14
      completed within a reasonable period of time, and certainly not within the 18-24
15
      month typical pendency reported by the USPTO.
16
           Motions to stay pending patent reexamination have been denied where the
17
      likely length of reexamination will serve to exacerbate the risk of lost evidence.
18
      *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp .2d 1107, 1111 (N.D. Cal. 2006).
19
           For the reasons explained in detail in the Oppositions to Motion for Stay in
20
      related '184 patent cases, incorporated herein by reference, the expected delay
21

22    [5]   *Sorensen v. Kyocera International, Inc., et al.*, Case No. 08cv411; *Sorensen v. Central
      Purchasing, LLC, et al.*, Case No. 08cv309; *Sorensen v. Logitech, Inc., et al.*, Case No. 08cv308;
23    *Sorensen v. Sunbeam Products, Inc., et al.*, Case No. 08cv306; *Sorensen v. CTT Tools, Inc., et al.*,
      Case No. 08cv231; *Sorensen v. Global Machinery Company, et al.*, Case No. 08cv233; *Sorensen v.
24    Emissive Energy Corp., et al.*, Case No. 08cv234; *Sorensen v. Motorola, Inc., et al.*, Case No.
      08cv0136; *Sorensen v. Ryobi Technologies, Inc., et al.*, Case No. 08cv0070; *Sorensen v. Emerson
25    Electric Co., et al*, Case No. 08cv0060; *Sorensen v. Energizer Holdings, Inc., et al*, Case No.
      07cv2321; *Sorensen v. Giant International, Inc., et al*, Case No. 07cv2121; *Sorensen v. Esseplast
26    (USA) NC, Inc., et al*, Case No. 07cv2277; *Sorensen v. Helen of Troy Texas Corporation, et al*,
      Case No. 07cv2278; *Sorensen v. The Black & Decker Corporation, et al*, Case No. 06cv1572.
27
28    [6]   *Sorensen v. Star Asia*, Case No. 08cv307.

Case No. _____

1    pending completion of the reexaminations is very likely to result in loss of evidence,

2    and loss of the ability to timely name and identify all necessary defendants.  If

3    Plaintiff is unable to identify defendants and others in possession of necessary

4    evidence, there is no way to ensure that evidence will be preserved during the stay.

5        Lengthy reexamination proceedings and corresponding lengthy stays

6    undermine the legislative mandate of "special dispatch," and also undermine the

7    intent of the Local Patent Rules to get cases to claim construction within

8    approximately 9 months and trial within 18 months of filing.  The Local Patent Rules

9    timeframe cannot be satisfied when lawsuits are stayed for reexamination.  Further,

10   in those cases where the Defendants have alleged a laches claim (whether or not

11   meritorious), the delay from a reexamination stay can only exacerbate the prejudice

12   problems that the laches defense is intended to address.

13       A stay would be unduly prejudicial to the Plaintiff and subject Plaintiff to a

14   clear tactical disadvantage.  No stay should issue.

15       At a minimum, the Court should, as it has already done in related cases,

16   provide Plaintiff the ability to propound an interrogatory to obtain identification of

17   nonparties who may be in possession of relevant evidence, and Plaintiff should have

18   leave to request further relief to ensure preservation of that evidence when

19   warranted.

20   **II.    PROCEEDINGS ON THE CLAIMED DEFENSE OF LACHES**
21   **        SHOULD NOT BE STAYED.**

22

23       Defendant has claimed entitlement to a laches defense (Docket #12, Eighth

24   Affirmative Defense).

25       Laches is an equitable defense to a claim of patent infringement.  *A.C.*

26   *Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed. Cir.

27   1992).  To invoke laches, the alleged infringer must prove two factors:  (1) the

28   patentee delayed filing suit for an unreasonable and inexcusable length of time; and

Case No. _____

(2) the alleged infringer suffered material prejudice attributable to the delay. *Id.* at 1028, 1032-34.

The reexamination proceedings have no bearing on a laches claim. If Defendant had a legitimate laches claim – if Defendant suffers material prejudice attributable to delay – stay of this case simply aggravates the situation.

Plaintiff should be entitled to proceed on discovery and motion practice, if appropriate, on the laches defense, while the reexamination proceeds. At a minimum, the Court's order for stay should specify that any further delay in proceeding with this case cannot be considered with respect to laches.

## III. PROCEEDINGS ON ISSUES IN THIS CASE THAT ARE UNRELATED TO THE SUBJECT MATTER OF THE PENDING REEXAMINATIONS SHOULD NOT BE STAYED.

The scope of a patent reexamination is strictly limited by statute. "Any person at any time may file a request for reexamination by the [US Patent and Trademark] Office of any claim of a patent on the basis of any prior art cited under the provisions of section 301 of this title." 35 U.S.C. §302 (2006). Prior art under section 301 means "prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." 35 U.S.C. §301 (2006). The subjective belief of a requestor that the prior art might "have a bearing on . . . patentability" is not a very high standard, especially when the requestor is a litigant and has a vested interest in the outcome.

Reexaminations of patents are much narrower in scope than the wide-ranging set of issues dealt with in infringement and/or declaratory relief actions involving the same patent. Furthermore, the resulting decisions from the PTO on *ex parte* reexaminations such as those currently pending on the '184 patent are not binding on either the requestors (Black & Decker and its co-defendants) nor on the Defendant in this case. As such, a patent reexamination is not a substitute for trial.

Because the reexaminations are limited to narrow issues, there is no reason to

Case No. _____

1   stay proceedings in this litigation on matters that do not fall within that narrow
2   spectrum.  In this case, those issues include at least three procedural issues, three
3   asserted equitable affirmative defenses, and several asserted patent invalidity and/or
4   unenforceability affirmative defenses.

5

6        A.    <u>Proceedings On Procedural Issues Raised By The Pleadings Should Not Be Stayed.</u>

7   Defendant has raised at least the following procedural issues in its Answer
8   (Docket #12): (1) proper venue (denied in paragraph 7; and asserted in Seventh
9   Affirmative Defense); (2) personal jurisdiction over the Defendant (denied in
10  paragraph 8, and asserted in Seventh Affirmative Defense); (2) statute of limitations
11  (Ninth Affirmative Defense); and (3) failure to state a claim (Sixth Affirmative
12  Defense).

13  The reexaminations ongoing before the PTO have no bearing on either of
14  these issues and therefore a stay will not serve to simplify the issues in question.  A
15  stay, however, would prejudice Plaintiff through a wholly unnecessary delay in
16  resolution of these threshold procedural issues.

17  As this Court ruled in the *Sorensen v. Star Asia* case, discovery and any other
18  proceedings relating to these two issues should not be stayed.

19

20       B.    <u>Proceedings On Affirmative Defenses Unrelated To Issues Being Addressed In Reexamination Should Not Be Stayed.</u>

21

22  Defendant has asserted substantive affirmative defenses that are unrelated to
23  the reexamination proceedings.

24  The reexaminations ongoing before the PTO have no bearing on either of
25  these affirmative defenses and therefore a stay will not serve to simplify the factual
26  or legal issues presented by these defenses.  A stay, however, would, prejudice
27  Plaintiff through a wholly unnecessary delay in resolution of these affirmative
28  defenses to infringement.  Discovery and any proper proceedings relating to these

Case No. _____

affirmative defenses should not be stayed.

C.    Proceedings on Patent Invalidity and/or Unenforceability Claims Outside of the Scope of the Reexamination Proceedings Should Not Be Stayed.

Defendant has not disclosed its basis for its claims of patent invalidity and/or unenforceability and therefore there is no reason to believe that these completely overlap with the reexamination proceedings.

These issues are not based upon prior patent or prior printed publications and does not fall within the scope of any possible patent reexamination proceeding.  As such, this Court will receive no assistance in resolving these matters from any PTO decision on the reexaminations.

There is no basis for delaying a resolution on defenses to infringement that bear no relation to issues that are the subject of the pending reexaminations.  The Court should proceed with discovery and related proceedings on these asserted defenses.

## CONCLUSION

This Court has said that "two years is long enough" for a stay pending reexamination, and stays of the '184 cases have already extended for over 13 months from the date of reexamination filing.  New evidence demonstrates that there is no reason to believe that the reexamination will be completed in two years.  Thus, any stay is without factual or legal basis.

Stay of the entire case is inappropriate because of the undue prejudice to Plaintiff, the likelihood that the stay will extend for an unreasonable length of time, and the overwhelming likelihood that the reexamination will not simplify the issues before the Court.

However, should the Court issue a stay, it should be limited to those issued before the USPTO and not any threshold procedural or other issues that are unrelated to the reexamination, specifically, (1) laches, (2) procedural issues; (3) affirmative

11.

defenses unrelated to the pending reexaminations; and (4) invalidity and/or enforceability claims that are outside of the scope of the reexaminations. Plaintiff should also be entitled to the relief given in the related cases regarding preservation of evidence.

DATED this Tuesday, September 02, 2008.

> JENS ERIK SORENSEN, as Trustee of
> SORENSEN RESEARCH AND DEVELOPMENT
> TRUST, Plaintiff
>
> /s/ Melody A. Kramer
> _____
> Melody A. Kramer, Esq.
> J. Michael Kaler
> Attorney for Plaintiff

Case No. _____

1

**PROOF OF SERVICE**

2

    I, Melody A. Kramer, declare:  I am and was at the time of this service working within in

3

the County of San Diego, California.  I am over the age of 18 year and not a party to the within

action.  My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600,

4

San Diego, California, 92121.

5

    On Tuesday, September 02, 2008, I served the following documents:

6

**OPPOSITION TO DEFENDANT'S MOTION TO STAY**

7

8

**DECLARATION OF MELODY A. KRAMER IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY**

9

10

11

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Gary Dukarich<br>Christie, Parker & Hale, LLP<br>350 West Colorado Blvd, Ste. 500<br>Post Office Box 7068<br>Pasadena, California 91109-7068 | Defendants/<br>Counterclaimants<br>HUMAN TOUCH LLC &<br>INTERACTIVE HEALTH<br>LLC | Email - Pleadings Filed<br>with the Court via ECF |

12

13

14

15

    ☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed

16

this document via the CM/ECF system for the United States District Court for the

Southern District of California.

17

    ☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address

18

represented to be the correct mail address for the above noted addressee.

19

    I declare that the foregoing is true and correct, and that this declaration was executed on

20

Tuesday, September 02, 2008, in San Diego, California.

21

22

                      /s/ Melody A. Kramer

23

                       Melody A. Kramer

24

25

26

27

28

2.

1  J. MICHAEL KALER, SBN 158296
2  KALER LAW OFFICES
3  9930 Mesa Rim Road, Suite 200
   San Diego, California 92121
4  Telephone (858) 362-3151
   michael@kalerlaw.com
5
6  MELODY A. KRAMER, SBN 169984
   KRAMER LAW OFFICE, INC.
7  9930 Mesa Rim Road, Suite 1600
   San Diego, California 92121
8  Telephone (858) 362-3150
   mak@kramerlawip.com
9
10
   Attorneys for Plaintiff JENS ERIK SORENSEN,
11 as Trustee of SORENSEN RESEARCH AND
   DEVELOPMENT TRUST
12
13
14            UNITED STATES DISTRICT COURT
15        FOR THE SOUTHERN DISTRICT OF CALIFORNIA
16
17 JENS ERIK SORENSEN, as Trustee of    ) Case No. 08cv1080 BTM CAB
   SORENSEN RESEARCH AND                )
18 DEVELOPMENT TRUST,                   )
                                        ) **DECLARATION OF MELODY A.**
19                                      ) **KRAMER IN SUPPORT OF**
                         Plaintiff      ) **PLAINTIFF'S OPPOSITION TO**
20                                      ) **MOTION TO STAY**
      v.                               )
21                                      )
22 HUMAN TOUCH LLC, a Delaware          ) Date:  September 12, 2008
   company, INTERACTIVE HEALTH,         ) Time:  11:00 a.m.
23 Inc., a Delaware corporation; and DOES 1) Courtroom:  15, Fifth Floor
   – 100,                               ) Hon. Barry Ted Moskowitz
24                                      )
25                         Defendants.  )
                                        )
26 ─────────────────────────────────────)
27
28

1    I, MELODY A. KRAMER, declare:

2    1.    I am not a party to the present action.  I am over the age of eighteen.  I

3    have personal knowledge of the facts contained within the following paragraphs, and

4    could and would competently testify thereto if called as a witness in a court of law.

5    2.    At all times relevant herein I have been an attorney for Sorensen

6    Research and Development Trust ("Sorensen"), Plaintiff in the above-captioned

7    matter.

8    3.    This declaration is made in support of Plaintiff's Response to OSC Re

9    Stay.

10    4.    In July 2007, Black & Decker filed a request for reexamination of U.S.

11    Patent 4,935,184 ("'184 patent").   In December 2007, co-defendants to Black &

12    Decker filed another request for reexamination.

13    5.    In the 13 months since filing with the USPTO, no office action – the

14    first substantive step in a reexamination proceeding – has still not issued.

15    6.    On June 25, 2008, well-respected intellectual property blogger Dennis

16    Crouch reported the results of a statistical analysis of USPTO reexamination figures

17    for 2000+ reexamination certificates published since 2000. The copy of a report is

18    attached herein as Exhibit B.

19    7.    On June 26, 2008, Professor Harold Wegner who has testified before

20    Congress regarding patent reforms and is also a partner with Foley & Lardner

21    (counsel for one of the *Black & Decker* case defendants) cited Dennis Crouch's

22    research and added his own blistering critique of the PTO reexamination process.

23    The copy of his email to Melody Kramer is attached herein as Exhibit C.

24    8.    In February 2008, Professor Wegner was also reported in the San Diego

25    Intellectual Property Lawyers Association journal as stating that "today the average

26    ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years).

27    If an appeal to the CAFC is involved, that extends the period to 7.7 years."  The

28    article from this journal is attached herein as Exhibit D.

2.

9.      Additionally, Sorensen has conducted its own research and found over 90 completed reexaminations that took in excess of seven years to complete. Further, Sorensen found many other reexaminations for which no certificate has yet issued after many years in the reexamination process.

10.     The Court has indicated that the length of the reexamination is a primary factor in issuing a stay, and that anything beyond 2 years is unacceptable: "if nothing seems likely at the end of two years, then I don't know that I'm going to keep the stay. I mean, I think the odds are that I am not going to keep the stay in place." Relevant pages from August 20, 2008 hearing transcript are attached herein as Exhibit A.


SWORN TO under penalty of perjury of the laws of the State of California and the United States, this Tuesday, September 02, 2008.


/s/ Melody A. Kramer

Melody A. Kramer, Esq.
Attorney for Plaintiff
mak@kramerlawip.com

3.

1

2

# TABLE OF EXHIBITS

Exhibit A ..................................................................................................................... 5

Exhibit B ..................................................................................................................... 7

Exhibit C ................................................................................................................... 11

Exhibit D ................................................................................................................... 16

```
 1    any available avenues, if there are, to go after those third

 2    parties to make sure that is preserved.

 3              THE COURT:  You have to keep in mind that there are

 4    limits to this stay, and if the reexamination does not occur

 5    within a reasonable period of time -- and I'm kind of using      12:06:48

 6    approximately, so at midnight on the day that this is up I

 7    don't want to see a motion -- but I'm using approximately two

 8    years, and ten or 11 months of that two years is already used

 9    up.

10              MS. KRAMER:  Actually more than that.                  12:07:06

11              THE COURT:  Pardon me?

12              MS. KRAMER:  Actually more than that.  It has been

13    just over a year.

14              THE COURT:  Well, you know, we're getting into the

15    second year, and if nothing seems likely at the end of two      12:07:12

16    years, then I don't know that I'm going to keep the stay.  I

17    mean, I think the odds are that I am not going to keep the

18    stay in place.  So we are really only talking about another

19    year or so.

20              MS. KRAMER:  Well, that is correct.  However, most     12:07:27

21    of these companies have had notice of this for a longer

22    period of time.  But whatever the length of time is, we just

23    want to make sure that that evidence doesn't disappear.

24    That's all.

25              THE COURT:  Okay.  So, addressing those four items,    12:07:41
```

EXHIBIT A - 5

1   patent owner statement, and they can advise the Patent Office

2   immediately if they want to file that, if they want to file a

3   statement or not.

4        They chose not to file it, waited the full two

5   months, didn't file any statement with the Patent Office as     12:35:31

6   opposed to telling them.

7        And in the second request they did the same thing.

8   In the second request -- the first request is going to wait

9   for the second request, so there is four months of this ten

10  months.                                                         12:35:43

11       THE COURT:  That may be and you can raise that.  My

12  two years is two years when the ball is in the Patent

13  Office's PTO's court to deal with it; that if they can't get

14  it done within two years, then, you know, I start to wonder

15  whether I should be staying the proceedings.                    12:35:57

16       Because I saw somewhere that sometimes it can take

17  up to five years.  I don't find that acceptable.  There is

18  just no finality and there is lots of economic issues that

19  companies are involved with that they can't have this hanging

20  over their head for five years, plus the time of litigation.    12:36:14

21       So when I say two years, that means two years that

22  the Patent Office has had it to decide.  So you can argue

23  later on about, well, they didn't have it to decide.

24       And it's not two years -- like I said, I don't

25  expect a motion when we begin -- it's midnight of the           12:36:33

    

Jun 25, 2008
**Ex Parte Reexamination Statistics II**

**Reexamination Results**



To get some sense of the PTO's current *ex parte* reexamination practice, I looked at the 2000+ reexamination certificates that have been published in the Official Gazette since January 2000. There are three potential outcomes for any particular reexamined claim: validity affirmed; validity affirmed with an amendment; and cancelled. In addition, claims may be added.

**Outcomes**: From my sample, 71% of the completed reexaminations resulted in claims that were either amended or cancelled while only the remaining 29% resulted in all claims being confirmed. A much smaller number – 12% – of the reexaminations resulted in all claims being cancelled.

The middle ground: 59% had at least one independent claim confirmed while 50% included at least one amended claim. For the 34 completed design patent reexaminations, the single claim was confirmed as valid 16 times and cancelled 18 times.

**Timing**: The reexamination certificates in my sample had an average pendency of 33.5 months (median 28.5 months).* The PTO's reported average and median are 24.0 months and 18.6 months respectively. The difference apparently comes from their inclusion of reexaminations from the 1980's and 1990's which had much lower pendency than more recent numbers. [PTO Data 1981-2007].

**Outcome & Timing**: Reexaminations that simply resulted in a confirmation that the the initial claims are valid were resolved more quickly (averaging 24 months) while those resulting in cancellation of all clams were much slower (averaging 45 months). Cases at the longer end of the spectrum often involved either BPAI appeals or lost files.



- Thanks to several Patently-O readers for showing me how to find reexamination certificates. I was able to use the Westlaw database for this search. (Remember law school and the free academic access). The data can be compiled from the PTO OG, but that would be a larger job. The PTO does maintain a list of all the issued reexamination certificates here.
- * I roughly calculated pendency by measuring the elapsed time from publication of a reexamination request to publication of the reexamination certificate.
- Reexamination Statistics I

Posted by Dennis Crouch in Academic Studies, Reexamination | Permalink | Comments (9)

Jun 07, 2008
**Patently-O Bits and Bytes No. 42: Two requests for help**
- What is the best way to search for reexamination certificates? Are these available through the PTO site?
- Does anyone have a good process flowchart for a university tech-transfer operation?
- Thanks! dcrouch@patentlyo.com

Posted by Dennis Crouch in Bits and Bytes, Reexamination | Permalink | Comments (20)

EXHIBIT B - 7

**Jun 05, 2008**
**Ex Parte Reexamination Statistics I**



Through its attorneys Microsoft requested *ex parte* reexamination almost thirty Avistar patents. In recent days, the PTO denied Microsoft's request in 14 of those cases.

Standing alone, this denial does not appear to be big news — except for the fact that over 95% of requests for ex parte reexamination are granted. In FY 2003–07, for instance, the PTO reviewed 2389 requests for *ex parte* reexamination and only denied the request in 105 cases. (4.4%). (At this point, there is some possibility that the denials are procedural as the documents are not yet available on PAIR).

To be granted, a reexamination request must present a "substantial new question of patentability" that affects at least one claim of a patent. The request must be based on a prior art patent or publication. Prior public use or sale are not admissible as evidence in an *ex parte* reexamination proceeding (although affidavits explaining the prior art publications is admissible).

In general, there has been a rise in requests for *ex parte* reexamination. As the chart below demonstrates, increase is entirely due to an increase in requests for reexamination that are filed by third parties.

### Ex Parte Reexamination Requests

_[Bar chart titled "Ex Parte Reexamination Requests" showing Requests for Ex Parte Reexamination (y-axis, 0–700) by Fiscal Year (x-axis, 1991–2007). Legend: PTO Director Ordered, Requests by Third Party, Requests by Owner.]_

- Statistics are from the USPTO Annual Report FY 2007 and other annual reports.
- Avistar News Story
- IPRIORI keeps ex parte reexamination data continually updated here [LINK]

Posted by Dennis Crouch in Academic Studies, Reexamination | Permalink | Comments (16)

**May 22, 2008**
**Patently-O Bits and Bytes No. 36**



- **[Not a] Patent Race**: IPO released its annualy survey of top utility patent assignees. IBM again leads the way with over 3,000 utility patents issued in 2007. The organization leads the report with the interesting statement: "IPO DOES *NOT* INTEND TO ENCOURAGE MORE PATENTING IN U.S.". [LINK]

EXHIBIT B - 8

- **Tafas v. Dudas**: On May 19, the CAFC released its notice of docketing in the case — starting a 60 day clock for the PTO to submit its opening brief. I expect that they will take the entire time.
- **Inter Partes Reexaminations:** Joff Wild highlights a new report on PTO *Inter Partes* Reexaminations: "Without appeal, the average pendency period for inter partes re-exam is 43.5 months, much longer than the 28.5 months reported by the USPTO – a 95% confidence interval would put the pendency between 34 and 53 months....To date, there has never been a single inter partes re-examination that has gone through the entire re-examination process (including appeal) and made it to completion. Only three have ever received a decision by the Board of Patent Appeals and Interferences." [LINK][Report][Zura comments]
- **MBHB Snippets**: In the past, I have published several practice focused articles in MBHB's Snippets publication. The newest edition is now online. Articles include:
  - Aaron Barkoff, Patent Litigation Under a Future Biosimilars Act
  - Kevin Noonan, Follow-on Biologic Drugs and Patent Law: A Potential Disconnect?
  - Jim McCarthy & Marcia Ireland Rosenfeld, It's Not Easy Selling Green
  - Benjamin Huber, Seagate: Reports of the Death of Opinions of Counsel Have Been Greatly Exaggerated
  - [Read Snippets]

Posted by Dennis Crouch in Bits and Bytes, Reexamination | Permalink | Comments (4)

May 12, 2008
## RIM v. NTP Continues to Trouble Patent Office



Although *NTP v. RIM* settled years ago, the PTO's reexamination of NTP's patents have continued to plod along.                    In the background are allegations by NTP that PTO officials improperly (and covertly) met with RIM CEO Jim Balsillie and other RIM representatives regarding the ongoing (ex parte) reexaminations.

During *ex parte* reexaminatoin, third-party communications are strictly forbidden.  It is clear, however, that in the months leading up to the NTP settlement, the PTO was feeling a tremendous amount of political pressure from RIM as well as Congress and the Senate.

Now, Congressman Howard Berman has demanded information from the PTO regarding these meetings "hand-delivered" by "May 19, 2008."

> "Did this meeting [with Balsillie and counsel] take place? What was discussed at this meeting? What is the USPTO's policy concerning ex parte communications between senior USPTO officials and parties who have an interest in the outcome of proceedings before the office? In what other instances, if any, did senior USPTO officials engage in similar ex parte communications with parties that had an interest in the outcome of a proceeding being conducted before the Office?"

Hopefully the Office will be able to provide Chairman Berman with a tidy set of evidence to clarify the rules and exactly what happened.

**Documents**:

- NTP's Allegations (8 MB) Check out pp 74+ and also pp 61 – 74.
- Time Article by Daren Fonda.
- Thanks to Hal Wegner and Greg Aharonian for the tip.

Posted by Dennis Crouch in Reexamination | Permalink | Comments (49)

Feb 04, 2008
## PubPat: Proposed Post-Grant Review Cuts-Out Public Interest



There is a possibility that a passed Patent Reform statute would eliminate third-party-requested reexaminations (*ex parte* and *inter partes*) and yet fail to create any substantive third-party initiated post-grant procedure to replace the current options.

In addition, the proposed post-grant review procedure would block a non-threatened party from challenging the validity of a patent more than a year after its issuance. In a letter sent today to the Senate reformers, Dan Ravicher of *PubPat* asks that third-party reexamination be preserved.  The non-profit groups such as PubPat and EFF have filed dozens of reexamination requests asking the PTO to invalidate "wrongfully issued" patents.

- PubPat Letter

**The Current Proposal Found in S.1145**: The proposed system of post-grant review would have two windows for third-party filings:

- First Window: Post-Grant oppositions filed by anyone within one year of issuance.  Patents reviewed in the first window would not be given any presumption of validity.
- Second Window: Opposition must be filed by party who has a likelihood of feeling "significant economic harm" based on the patent. A presumption of validity would apply in reviews within the second window.

The PTO would be required to complete its review work within 18 months. Post grant reviews would be conducted by a three-member panel of administrative judges rather than by examiners. Parties to the review may settle the case.

- PubPat Recent Successes:
  - Forgent Networks '672 "JPEG" patent: Broadest claims finally rejected; Patentee abandoned assertion of patent.
  - Columbia '275 Axel Cotransformation Patent: All claims finally rejected; Patentee abandoned assertion of patent.

EXHIBIT B - 9

- Microsoft '517 FAT Patent: Patentee modifies claims, which are allowed.
- Pfizer '156 Lipitor Patent: Patentee modifies claims, which are allowed.
- WARF Stem Cell patents and Gilead Tenofovir (AIDS drug) patents have had all claims non-finally rejected, but are still pending.

Posted by Dennis Crouch in <u>Reexamination</u> | <u>Permalink</u> | <u>Comments (8)</u>

**Aug 22, 2007**

**In Reexamination, PTO is Not Bound by District Court Claim Construction**

*In re Trans Texas Holding Corp.* (Fed. Cir. 2007)

Trans Texas holds two patents directed to a system of insulating both deposits and loans from inflationary and short-term interest rate fluctuations. In earlier litigation, a Texas district court construed various claim terms. Now, in reexamination, the PTO has taken a fresh look and offered its own interpretation of the claims.

Issue Preclusion (AKA Collateral Estoppel) traditionally blocks the *same parties* from relitigating the same issue in a later proceeding. CAFC caselaw has identified four elements of issue preclusion:

1. Identity of the issues in a prior proceeding;
2. The issues were actually litigated;
3. Determination of the issues was necessary for the prior judgment; and
4. The party defending against preclusion had a "full and fair opportunity to litigate the issues."

**Ex Parte Proceeding**: Although reexamination is an *ex parte* proceeding, the CAFC considers the PTO to be a "party" as any other outcome "simply makes no sense."

> The PTO is plainly a party to these appeal proceedings, and if it were not treated as a party, there would be no basis for even considering the application of issue preclusion in the first place.

Since the PTO did not have an opportunity to litigate the issue in the Texas district court, it cannot be bound by that decision.

> [T]he PTO was not even a party to the earlier district court litigation and cannot be bound by its outcome.

**Obviousness affirmed.**

Posted by Dennis Crouch in <u>Reexamination</u> | <u>Permalink</u> | <u>Comments (9)</u>

EXHIBIT B - 10



**Melody Kramer <freelancelaw@gmail.com>**

# Reexamination Reform: Structural Changes needed at the PTO, or Why Post-Grant Reform May be Meaningless

2 messages

---

**Wegner, Harold C. <hwegner@foley.com>**                    **Thu, Jun 26, 2008 at 9:38 AM**

Beyond *statutory* reforms, the new Director of the PTO must reallocate the $ 2 billion annual PTO budget to focus a far greater percentage on the Board and to shift more of the responsibility for reexamination to the Board.  The shameful fact not one single merits appeal in an *inter partes* reexamination under a law enacted in the *last century* has *ever* reached the Federal Circuit speaks for itself.

### *Faux* Victory over *Ex parte* Reexamination Backlogs:

"All ex parte patent reexaminations pending for more than two years were processed to final determination."

*Two years*?  Really, just *two* years?  That's what the PTO claims in its latest Annual Report.  Statistics released on June 25, 2008, by Professor Dennis Crouch paint an entirely different picture.

### Nearly Eight (8) Years Pendency for Reexams that Reach the Federal Circuit: For important reexaminations – measured by those that reach the Federal Circuit – the average pendency approaches eight (8) years.

### 111th Congress Patent Reform

: No matter what *statutory* changes are made in the coming Congress in 2009, and no matter what demands for "special dispatch" may be placed on the system, any post-grant system that relies upon the presently constituted Board is doomed to utter failure. The scant resources devoted to the appellate level in the United States versus Japan are an order of magnitude apart.

The attached paper introduces some of Prof. Crouch's work as well as comparative data involving the Japanese system which *does* properly allocate resources and which *does* avoid the backlog problem faced in the United States.

Regards,

Hal

EXHIBIT C - 11

# *Ex parte* Reexamination Reform



**Three Year Average Reexamination Pendency***

*"All ex parte patent reexaminations pending for more than two years were processed to final determination."*

-- **United States Patent and Trademark Office****



**Post-Grant Average Pendency — Japan/U.S.**

**Japan Patent Off. (7 mo.)** ***

***Ex parte* Reex. (33.5 mo.)** *

***Ex parte* Reexamination** including Federal Circuit decision (7.7 years) ****

**APJ/appeal examiners as % of total — Japan/U.S.** ***

JPO Appeal Examiners
U.S. Adm. Patent Judges

EXHIBIT C - 12

Ex parte Reexamination Reform
***

There are serious structural problems with U.S. reexamination – both *ex parte* and *inter partes.* At the heart of the matter are (a) insufficient resources put into the appellate level at the PTO *and* (b) the need to integrate the entire reexamination process under the auspices of the Board.

The $ 2 billion annual PTO budget needs to be reallocated to refocus resources on reexamination.


***Important Reexaminations Remain Pending Three-Plus Years***:  Many if not most *ex parte* reexaminations lose their commercial criticality after three years, resulting in either abandonment or acceptance of narrow claims after that period.


***Seven-Plus Years for Reexaminations Reaching the Federal Circuit:***

Stripping away the "easy" *ex parte* reexaminations – particularly those presented by the patentee himself – and those that involved commercial settlements (where the patentee often then accepts whatever narrow claims may be offered by the Examiner), the remaining reexaminations would have a much higher average pendency than the already unsatisfactory 33.3 month average.

To gauge the pendency of "important" reexaminations, a study was made of all reexaminations that have reached the Federal Circuit for a merits appeal.  The average pendency for a reexamination that involves a decision by the Federal Circuit remains at nearly eight (8) years. [****]

HCW

June 26, 2008

***

EXHIBIT C - 13

Ex parte Reexamination Reform

## **Endnotes**

[*] The chart and data are taken from Professor Dennis Crouch, *Reexamination Statistics II, Patently O,* Ex Parte June 25, 2008.  His analysis explains the chart, which is based upon his "look[ ] at the 2000+ reexamination certificates that have been published in the Official Gazette since January 2000. * * * *Timing:* The reexamination certificates in my sample had an average pendency of 33.5 months (median 28.5 months).  The PTO's reported average and median are 24.0 months and 18.6 months respectively. The difference apparently comes from their inclusion of reexaminations from the 1980's and 1990's which had much lower pendency than more recent numbers. [PTO Data 1981-2007].  *Outcome & Timing*: Reexaminations that simply resulted in a confirmation that the initial claims are valid were resolved more quickly (averaging 24 months) while those resulting in cancellation of all clams were much slower (averaging 45 months). Cases at the longer end of the spectrum often involved either BPAI appeals or lost files." *Id.*

**United States Patent and Trademark Office Annual Report (2007).

***Data is taken from a paper circulated in 2007, *Patent Reform in the 110th Congress:  Lessons from Tokyo* (*attached*), which includes original U.S. PTO and Japan Patent Office documentation.

**** This data has been previously reported by the present writer in a series of notes and appears in a table, *Ex Parte Reexaminations Pendency for Proceedings involving a Federal Circuit Appeal* (attached).

EXHIBIT C - 14

# *Ex Parte* Reexamination Pendency for Proceedings involving a Federal Circuit Appeal[*]

## Average Reexamination Pendency = 7.7 years

| Reexamination Proceeding | Pendency (mos.) |
| --- | --- |
| *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) | 50 |
| Filed November 1996 Certificate Jan. 2001 | |
| *In re Baker Hughes*, 215 F.3d 1297 (Fed. Cir. 2000) | 87 |
| Filed February 1994 Certificate May 2001 | |
| *In re McNeil-PPC, Inc*., 2000 WL 426148 (Fed. Cir. 2000) | 80 |
| Filed Nov. 1994 Certificate July 2001 | |
| *In re Fortunet, Inc.*, 2000 WL 420657 (Fed. Cir. 2000) | 89 |
| Filed October 1995  Certificate March 2003 | |
| *In re Lee*, 12 Fed.Appx. 915 (Fed.Cir. 2000) | 74 |
| Filed June 1995 Certificate August 2001 | |
| *In re Laitram Corp*., 1999 WL 1136829 (Fed.Cir. 1999) | 78 |
| Filed June 1993 Certificate December 1999 | |
| *In re Hiniker Co*., 150 F.3d 1362 (Fed. Cir. 1998) | 62 |
| Filed June 1995 Certificate August 2000 | |
| *In re Am. Acad. of Sci. Tech Center*, 367 F.3d 1359 (Fed. Cir. 2004) | 139 |
| Filed June 1994 Certificate January 2006 | |
| *In re Bass*, 314 F.3d 575 (Fed. Cir. 2002) | 106 |
| Filed January 1996  Certificate March 2005 | |
| *In re Morgan*, 87 Fed.Appx. 746 (Fed.Cir. 2004) | 51 |
| Filed August 2000  Certificate November 2004 | |
| *In re Curtis*, 354 F.3d 1347 (Fed. Cir. 2004) | 118 |
| Filed [merged reissue]: Sept. 1994 Est.[**] July 2004 | |
| *In re Inland Steel Co*., 265 F.3d 1354 (Fed. Cir. 2001) | 113 |
| Filed Jan. 1993  Certificate June  2002 | |
| *In re Modine Mf'g. Co.*,18 Fed.Appx. 857 (Fed.Cir. 2001) | 134 |
| Filed August 1995 Certificate October 17, 2006 | |
| *In re Icon Health And Fitness, Inc.*, __ F.3d __ (Fed. Cir. 2007) | 113 |
| Filed:  September 1998  Est. 2008[**] | |

---

[*]Search on Westlaw CTAF database for [ti("in re") and reexamination] to identify reexamination cases.  Search on on Lexis database for patent reexamination certificate  involved in the subject cases.

[**]Lexis does not show the issuance of a certificate for two of the cases.  For purposes of this survey a date six months after the January 2004 Federal Circuit decision date is used for the *Curtis* reexamination; similarly, a date six months after *In re Icon* Health is used.

HCW
Search updated August 5, 2007.

EXHIBIT C - 15



Volume 11, Issue 10                    February 2008

# SDIPLA News

## SDIPLA FEBRUARY 7, 2008, 6:00 P.M. DINNER MEETING
### FEATURING HAROLD C. WEGNER, ESQ.
### D.C. OFFICE OF FOLEY & LARDNER
### "PATENT REFORM IN CONGRESS" AND OTHER TOPICS
### SHERATON HOTEL LA JOLLA

Mr. Wegner will discuss Patent Reform in Congress, the PTO and the Courts: Senate "Cloture" and Necessary Compromises; and Judicial Challenges, Supreme Court Quanta "patent exhaustion"; and Kubin post-KSR biotechnology obviousness, and other challenges.

Mr. Wegner is a partner at the D.C. office of Foley & Lardner while continuing his teaching affiliation with the George Washington University Law School, where he was director of the Intellectual Property Program and professor of law. Mr. Wegner regularly operates in Japan, working with the firm's Intellectual Property Department. Mr. Wegner crafts strategies for multinational patent enforcement and management based on current intelligence on global intellectual property law and practice as well as cutting edge understanding of trends in patent case law.

Mr. Wegner was honored recently with the American Intellectual Property Law Association's President's Award for Outstanding Achievement for his long time efforts in mentoring and in advancing diversity within the legal profession and the AIPLA. Mr. Wegner holds degrees from Northwestern University (B.A.) and the Georgetown University Law Center (J.D.).

IN THIS ISSUE:
TABLE OF CONTENTS

Professional Profile:                     1

Internet Sightings                        2

Dinner Reservation Form                   4

Employment                                5

Announcement                              8

Membership Renewal Form                   9

**February 7, 2008 — Sheraton Hotel La Jolla:**

**Date/Time/Location:**
February 7, 2008
6:00 p.m.—8:30 p.m.
Sheraton Hotel La Jolla
3299 Holiday Court, La Jolla

**NOTES:**
Complimentary parking

**Directions:**
From I-5 S to La Jolla Village Drive;
Turn left, left on Villa La Jolla, left on Holiday Court
From I-5 N to La Jolla Village Drive;
Turn right, left on Villa La Jolla, left on Holiday Court

EXHIBIT D - 16

Volume 11, Issue 10 | February 2008

*Internet Sightings*
by Jim Hawes (cont. p. 3)

(cont. p. 3)

This column highlights some of the more notable recent internet notices, newsletters and blogs dealing with IP prosecution issues. It is a distillation of the submitted IS column. The full IS column, with compilations of some of the sources such as Hal Wegner's newsletter, should be up and available at www.internetsightings.com shortly.

**Hal Wegner's** newsletter – a lot of great stuff – Contact: hwegner@foley.com

• The 1/5/08 email states that today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years.
• Hal's 1/6/08 posting stresses the importance of a patent-savvy next President, and that now is the time to work towards that goal.
• The 1/7/08 newsletter attaches the CAFC's en banc order in the Egyptian Goddess design patent case, and lists the issues to be briefed.
• The 1/13/08 posting discusses the Commonwealth Scientific appeal to the CAFC from grant of an injunction; will address eBay inj. standards.
• Hal's 1/15/08 email reports the Baldwin Graphic decision of the CAFC and its discussion of "a," "the" and "said."
• The 1/22/08 posting discusses prospects for passage of the patent reform bill, which if it happens will happen in February according to the IPO.
• The 1/24/08 email reports that Senator Leahy has the votes to pass patent reform legislation in February. The AIPLA seems to be ignoring it.

---

**SDIPLA
Board of Directors**

**President**
Robert W. Prince
ACADIA Pharmaceuticals, Inc.
rprince@acadia-pharm.com

**Vice President**
Boris Zelkind
Knobbe Martens Olson & Bear LLP
619 235-8550
boris.zelkind@kmob.com

**Secretary**
Jessica S. Mitchell
Neil Dymott
619 238-2255
jmitchell@neildymott.com

**Treasurer**
John E. Peterson
John.e.peterson.ph.d@gmail.com

**Immediate Past President**
Thomas E. Coverstone
858 336-8620
patpend@sbcglobal.net

**Newsletter Editor**
Jessica S. Mitchell

**Webmaster**
Sarah Burrows

---

The SDIPLA thanks our Sponsors for the monthly meetings:

**Knobbe Martens Olson & Bear LLP**
www.kmob.com

**Paul, Hastings, Janofsky & Walker LLP**
www.paulhastings.com

**Townsend and Townsend and Crew LLP**
www.townsend.com

(listed alphabetically)

EXHIBIT D - 17